RINKEL, Respondent, v. RINKEL, Appellant.

St. Louis Court of Appeals, April 26, 1904.

ADMINISTRATION: Removal of Administrator: Waste. It is not sufficient ground for the removal of an administrator of an estate to show that he had sold real estate belonging to the estate at a less price than another bid for the same real estate, made after the sale was consummated, nor was it evidence of bad faith on the part of the administrator to insist upon the approval if a sale for the lesser sum in the face of a better offer from the decedent's widow, where the evidence showed he knew that such widow was without means to make her offer good, although she offered to give bond, but did not make her offer good by tendering the same.

Appeal from St. Louis City Circuit Court.—*Hon. Franklin Ferriss*, Judge.

AFFIRMED.

*Rassieur & Rassieur* for appellant.

(1) If, upon the survey of the whole administration it appears that the administrator is wasting the estate, or abusing his trust to the prejudice of those beneficially interested in the estate, a just ground for removal is shown. R. S. 1899, sec. 42; Owens v. Link, 48 Mo. App. 534; Meriwether v. Block, 31 Mo. App. 170; Lewellyn v. Lewellyn, 87 Mo. App. 9; 1 Woerner, Admr. (2 Ed.), sec. 269; 11 Am. and Eng. Ency. (2 Ed.), p. 819. (2) And where a case of mismanagement and unfaithful conduct on the part of the administrator is made out, it is the duty of the court to remove him. Haynes v. Carpenter, 86 Mo. App. 30. (3) The liability of an administrator is regarded by the principles applicable to the relation of trustee and *cestui que trust;* he is therefore bound to be absolutely honest and faithful in the discharge of his duties, and is bound to be as diligent and prudent in the management and care of the estate, as prudent men of discretion and intelligence employ in their own affairs. Reynolds' Appeal, 70 Mo. App. 576; Taylor v. Hite, 61 Mo. 142; Finley v. Schlueter, 54 Mo. App. 455; Estate of Horner, 66 Mo. App. 531; 2 Pomeroy, Eq. Jur. (2 Ed.), secs. 1066, 1070. (4) (a) The acts of the administrator's attorneys with reference to the management of this estate and in causing the foreclosure of the equities of redemption owned by it, must be deemed in law the acts of the administrator, and the administrator accordingly held responsible therefor. Field v. Matson, 8 Mo. 686; Kerby v. Chadwell, 10 Mo. 392; Gehrke v. Jod, 59 Mo. 522; Biebinger v. Taylor, 64 Mo. 63; Bank v. Hoeber, 88 Mo. 37; Chouteau v. Allen, 70 Mo. 290. (b) The knowledge acquired by the administrator's attorneys during the time of the administration of this estate, is in law the knowledge of the administrator.

*W. B. & Ford W. Thompson* for respondent.

(1)   Misconduct and fraud will not be presumed where all the facts consist as well with honesty and fair dealing as they do with an intention to defraud.   Picot v. Bates, 47 Mo. 392; Rumbold v. Parr, 51 Mo. 592; Dallam v. Renshaw, 26 Mo. 533; Ames v. Gilmore, 59 Mo. 537; Kitchen v. Cape Girardeau, 59 Mo. 514; Kerr on Fraud and Mistakes, 384; Shoe Co. v. Birdseye, 75 S. W. 1036.

BLAND, P. J.—This proceeding was originally instituted in the probate court of the city of St. Louis, where, on August 27, 1902, a motion was filed asking for the removal of the respondent as administrator of the Estate of Louis F. Rinkel, deceased.   The motion, omitting caption, is as follows:

"Now comes Pearl B. Rinkel, widow of said Louis F. Rinkel, deceased, and curatrix of the estate of Louis Rinkel, a minor, only child of said deceased, and respectfully represents that she and the said minor, her only child, are the only ones interested as heirs in the estate of said Louis F. Rinkel, deceased.

"That George W. Rinkel is the duly qualified administrator of the estate of said deceased, administering upon said estate and as such, charged with the duty of preserving said estate for the creditors and heirs of said deceased, and of realizing the largest possible proceeds therefrom; that among the assets of said estate, subject to be applied to the payment of the creditors thereof, there were three equities in certain parcels of real estate in the city of St. Louis described in the inventory of said estate, one, an equity in a certain lot of ground on Easton avenue, being lot No. 8, of city block No. 3805 W., which lot was encumbered by a deed of trust securing a principal note for the sum of $1,500 made by said deceased; second, an equity in an undivided one-sixth interest in a lot on Franklin avenue, in city block No. 941, having a front on the south

line of Franklin avenue of twenty-five feet (25 feet) by a depth southwardly of one hundred forty-four feet and seven inches (144 feet and 7 inches) which lot was encumbered by a deed of trust on the whole of said property, and on all undivided interest therein, securing four principal notes, aggregating the sum of $2,800, which notes were jointly made by said deceased and his four brothers (of whom said George W. Rinkel is one) and a sister; and third, an equity in a certain lot of ground in city block No. 3837, having a front of fifty feet (50 feet) on the west line of Hamilton avenue, by a depth of one hundred and thirty-five feet (135 feet) bounded on the north by an alley, west by an alley, and on the south by property of Adolph H. Rinkel, on which property there is a deed of trust securing the payment of a principal note for $450; that for the purpose of realizing on said equities, the said administrator obtained an order of sale thereon at the March term, 1902, of this honorable court, and also obtained a fair and reasonable offer for the first and third of the equities above described from the widow of said deceased, this petitioner, but said administrator declined said offers, in disregard of his duty in the premises, to realize on said equities the largest possible price obtainable therefor at the earliest time possible before a sale could be had under said deeds of trust, there being no personal property or money among the assets of said estate out of which to discharge said deeds of trust, or such part of the notes secured by the real estate secondly above described, as properly was payable by the deceased.

"Your petitioner further alleges, on information and belief, that said administrator, instead of preserving, guarding and protecting the interests of said estate in said equities, caused his attorney, William B. Thompson, Esq., to purchase said deeds of trust, or at least two of them, for his own, said attorney's account, or the account of clients, who said attorney knew would act in accordance with the wishes of said attorney,

and thereafter, in further disregard of his sworn duty in the premises, procured the advertisement and sale of said premises under said deeds of trust before a sale of said equities could be consummated in this honorable court, for prices far in excess of any that could be expected to be realized at said trustees' sales, and well knowing that this petitioner had not the means to protect her interest at said sales, and that the minor child of said deceased, who is a nephew of said administrator, had not the means for the protection of its interests, and that this petitioner, the curatrix of said minor child, had neither the means nor the legal authority for the protection of said ward's estate, to bid for her ward at said trustees' sales.

"This petitioner further alleges that by the improper and unlawful conduct of said administrator in the matters aforesaid the said estate lost over $500 by said sale of said Easton avenue property, and first herein described; that by the sale of the interests of said deceased in said Franklin avenue lot, said estate lost at least the sum of $250, and that said Franklin avenue real estate was purchased by a brother of said administrator, who was also liable on the deed of trust on said property, and that a loss to said estate is inevitable at the sale of said Hamilton avenue lot last above described which sale is set for September 4, 1902.

"This petitioner further alleges that said course of conduct, in disregarding his duties in the premises was brought about by the refusal of this petitioner to consent to the sale of certain other property of the deceased at prices far below the real value thereof, to a brother of said administrator.

"In view of the premises, your petitioner prays that said George W. Rinkel may be removed from his said office of administrator, and that another may be appointed in his place, so that no further assets of said estate may be lost or wasted."

After due service and upon the appearance of all

parties, the probate court, on hearing said motion, sustained the same and entered an order removing respondent as administrator of said estate; respondent thereupon appealed to the circuit court of the city of St. Louis, where said motion, was heard *de novo* on March 25, 1902.

On February 10, 1900, Louis F. Rinkel, of the city of St. Louis, died intestate leaving an estate consisting principally of real estate situated in the city of St. Louis. He left surviving him, as his only heir, his son Louis Rinkel, a minor. He also left a widow, Pearl Rinkel. On February 19, at the request of the widow, George W. Rinkel, the respondent, was appointed administrator of the estate of decedent by the probate court of the city of St. Louis. He qualified and took charge of the estate. His inventory shows that the personal effects of the estate, valued at one hundred and eighty dollars, were turned over to the widow as her personal dower. It also shows he died seized of an interest in the following real estate:

"(1) Lot in city block 3837, having a front of fifty feet on west line of Hamilton avenue; subject to a deed of trust securing note for $450.

"(2) Lot 8 in city block 3805 W., having a front of 100 feet on south line of Easton avenue; subject to a deed of trust securing note for $1,200.

"(3) An undivided one-sixth interest in the following real estate:

"(a) Lot in city block 140, having a front of twenty-six feet on east line of Seventh street;

"(b) Lot in city block 941, having a front of twenty-five feet on the south line of Franklin avenue; subject to a deed of trust executed by all the joint owners of said lot, securing a note for $2,800;

"(c) Lot in city block 3819, having a front of 100 feet on east line of Goodfellow avenue;

"(d) Lot in city block 3819, having a front of 100 feet, nine inches on south line of Easton avenue;

"(e)   Lot in city block 3820, having a front of 216 feet on south line of Easton avenue;

"(f)   Lot No. 3 in city block 3820, having a front of 100 feet on south line of Easton avenue;

"(g)   Lot No. 4, in city block 3820, having a front of 100 feet on south line of Easton avenue;

"(h)   Lots A, B, and C of Hawley's Addition in city block 3820, having a front of 150 feet on south line of Easton avenue;

"(i)   Lot D of said addition and block having a front of sixty-four feet on the south line of Easton avenue;

"(j)   Lot E of said addition and block, having a front of fifty-seven feet, six inches on the west line of Goodfellow avenue;

"(k)   Lots F, G and H of said addition and block, having a front of 150 feet on west line of Goodfellow avenue;

"(4)   An undivided one-sixth interest in a lot containing five and one-half acres in the county of St. Louis, being in township 45, range 6."

On January 7, 1902, the respondent, as administrator, presented his petition to the probate court asking for the sale of all the real estate of the estate for the payment of debts thereof, alleged to amount to $2,137.21 (additional debts aggregating $500 were afterwards probated against the estate). Notice of the application was given to Pearl Rinkel and her son, and the same was published and served as required by law. On March 8, 1902, the probate court made an order for the sale of all said real estate, or as much thereof as might be necessary to pay the debts of the estate, the sale to be private or public. On January 2, 1902, the administrator filed his report of sale made under the order. By said report it appears that on March, 18, 1902, said administrator caused said real estate to be appraised by three householders of the city of St. Louis. The affidavit of the appraisers and their certificate of ap-

praisement are attached to and made a part of the report. By this affidavit it appears that the appraisers qualified and were sworn on March 17, 1902, and by their certificate it appears that they performed and completed their labors on March 18, 1902.

By said appraisement the value of the interest of said deceased in said properties, over and above the deeds of trust encumbering the same, was fixed as follows:

"Parcel (1) at the sum of .... ....$  232.50
Parcel (2) at the sum of .... .. ..    870.00
Parcel (a) at the sum of .... ....    346.65
Parcel (b) at  the sum of .... ...    158.34
Parcel (c) at the sum of .... ....    200.00
Parcel (d) at the sum of .... ....    416.65
Parcel (e) at the sum of .... .... 1,178.35
Parcel (f) at the sum of ...........    335.00
Parcel (g) at the sum of .... ....    335.00
Parcel (h) at the sum of .... ....    450.00
Parcel (i) at the sum of .. .. .. ..    266.75
Parcel (j) at the sum of .... .. ..    114.00
Parcel (k) at the sum of .... .. ..    300.00
Parcel (4) at the sum of .... .. ..    100.00

"Total appraisement ... ...... $5,303,24."

It further appears by said report that said administrator, on March 18, 1902, at private sale, sold to Adolph H. Rinkel parcels A, B, D and E, and to Harry A. Rinkel parcels C, F, G, H, I, J, K and 4 of said properties above described, at the exact appraised values thereof as fixed by said appraisers; that said administrator prayed for the approval and confirmation of said sale. Thereafter, on June 14, 1902, plaintiffs herein filed exceptions and objections to said sales as so reported, and asked the disapproval thereof. Said exceptions and objections, omitting caption, are as follows:

"Now comes Pearl B. Rinkel, widow of Louis F. Rinkel deceased, and curatrix of Louis Rinkel, the only child of said Louis F. Rinkel, deceased, such appointment as curatrix having been made by the probate court of the city of St. Louis, and respectfully represents that on or about the seventeenth day of January, 1902, she received notice from George W. Rinkel, administrator of the estate of Louis F. Rinkel, deceased, advising her of a proposed application for an order of sale of the real estate of said deceased, at the March term, 1902, of this court; that shortly thereafter, your petitioner, through her counsel, advised the said administrator that she desired to bid at said sale when ordered, in order that the debts of the deceased might be paid; that on or about the eighth day of March, 1902, an order of sale was made by this honorable court, and on March 18, 1902, the real estate of said deceased was duly appraised, the certificate of which appraisement is filed with the report of sale in this court; that on the said last-named day, to-wit, March 18, 1902, without any opportunity having been given to your petitioner for making a bid upon said premises, the sale reported by the administrator was made as per his report; that on March 26, 1902, your petitioner caused a letter to be transmitted to said petitioner, of which a copy is hereto attached, wherein your petitioner offered to purchase the equities of redemption in the properties described as Nos. 1 and 2 in the report of the administrator, at a price of the total indebtedness of Louis F. Rinkel's estate, which indebtedness amounts to $2,135.21 together with interest thereon, and the costs of closing the administration of said estate. Your petitioner represents that the administrator was urged to make said sale, subject to the approval of the court, and called the attention of the administrator to the fact that such sale would be a realization largely in excess of the price put upon the equities in said premises by the appraisers, and that by making said sale in the manner aforesaid, this hon-

orable court would have the opportunity of approving such sale as might be to the best advantage of the heirs of said deceased.

"Your petitioner further represents that notwithstanding the above offer made by her and the reasons assigned for urging its acceptance, subject to the approval of this court, the administrator declined to entertain the same, contrary to his duty as such administrator and in furtherance of his own interests and personal motives. Your petitioner now again comes into court and offers to pay for the said equities of redemption described as Nos. 1 and 2 in the order of sale, and also in the report of sale, and offers twenty-five hundred dollars ($2,500) for said equities and offers to enter into bond in the sum of five hundred dollars ($500) with good and sufficient surety that she will make that offer at private sale, if the sale now pending in this court is disapproved, as should be done. Your petitioner furthermore represents that if the court should be inclined to disregard her wishes to have the equities aforesaid sold and should prefer and insist upon selling the other property of the deceased, namely, the property described as third in the order of sale and in the report of sale and covering subdivisions A, B, C, D, E, F, G, H, I, J, K, and also subdivision 4; in fact all the rest of the property, then your petitioner now offers to pay for the undivided one-sixth interest of the deceased in said premises, the sum of forty-eight hundred and seventy-four one-hundredths dollars ($4,800-.74) and also offers to pay for the different pieces, if sold separately, such an increase in proportion as will fall to each piece by dividing the $4,800.74 between said pieces in proportion to their appraised values. And your petitioner also offers to give a bond in the sum of five hundred dollars ($500) with good and solvent sureties, that she will make said bid for said property if offered at private sale to her between now and the beginning of the September term, 1902, of this court.

"Finally, your petitioner excepts to the approval of the sale now reported to this court for the following reasons:

"1.   Because the price realized therefor is less than the price that can be realized for said premises with a proper effort to sell the said premises.

"2.   Because, ordinarily, it is impossible to get the full value for an undivided interest in property which could be gotten for such interest if the whole property were offered for sale.

"3.   Because the heirs of the deceased Louis F. Rinkel, represented by your petitioner, in her own right and as curatrix of her minor child, object to the sale of the undivided interest that is now reported as having been sold, subject to the approval of this court, and insist upon the sale of the premises in which the entire title is vested in the deceased, subject to encumbrances that may be foreclosed at any time.

"4.   Because the offer as made for the premises on Hamilton avenue and Easton avenue, described under the first and second subdivisions of the order of sale, is far superior to the sale that is now reported, the amount offered and bid being more than twice the amount of the appraisement as returned in the report of sale, while the sale of the property which the administrator has made is simply for the amount of the appraisement of the other pieces.

"5.   Because there is no occasion to sell as much property as is reported to be sold, since the amount of the indebtedness does not exceed $2,500 and the sale is for over $4,000.

"6.   Because the administrator, in making the sale reported, has disregarded his duty in the premises, to endeavor to procure the best price obtainable for the premises, and has made the sale merely for the purpose of getting rid of a partition suit now pending of the said premises in the circuit court."

The letter referred to in said exceptions and thereto attached is as follows:

"St. Louis, Mo., March 26, 1902.
"George W. Rinkel, Esq.,
 "1475 Hamilton avenue, City.
"Dear Sir:

"Having informed you, through my attorneys, that I was ready and willing to bid on the real estate of my husband, in order that the debts of his estate might be paid, I supposed that you would give me a chance to bid on the same after you obtained the order of sale from the probate court a few days ago. Since you have seen fit to offer to your brothers, the undivided one-sixth interest of my deceased husband, and concluded a sale to your brothers at the low price at which the property was appraised, without giving me an opportunity to make you an offer on the same, I desire now to make you the following offer for the equities of redemption in lot 8, block 2, of Rose Hill Addition, alias block 3805 West, of the city of St. Louis, fronting 100 feet on Easton avenue, by a depth of 236 1-2 feet and for the equity of redemption in parts of lots 17 and 18 of block 3837, of the city of St. Louis, fronting fifty-seven feet, six inches, more or less on Hamilton avenue, by a depth of 135 feet, the foregoing two properties being subject to two deeds of trust, one securing a principal note of $1,200 and a principal note of $450. My offer for these two properties is the amount of the indebtedness of my husband's estate, and I am ready to pay you $50 or $100 earnest money on this purchase whenever you desire to close the same.

"I desire to call your attention to the fact that my offer will enable you to pay all of the indebtedness of the estate without selling any part of the property derived from the estate of Mrs. Catherine Rinkel, in which my husband has only an undivided interest.

"I desire, furthermore, to call your attention to the

fact that this offer of mine is several times larger than the amount of your appraisement of said property, and, therefore, ought to be accepted and approved in preference to any other sale that you may have made. Since all your sales must be made subject to the approval of the probate court, I suggest that you make this sale to me and thus put it within the power of the probate court to approve at its next term, either the sale to me as above, or the sale to your brothers of the undivided interest in the property derived from Mrs. Catherine Rinkel.

"Please let me have an early answer to this offer, and oblige,

"Yours very truly,
"PEARL B. RINKEL.
"(Signed)        By RASSIEUR & RASSIEUR,
"Her Attorneys."

Said reports and exceptions were heard by said probate court upon the appearance of all parties, in person and by counsel, on June 27, 1902, and thereupon taken under advisement by said court; thereafter, on July 15, 1902, said court having duly considered said report, disapproved the same. The order disapproving said sale is as follows:

"Now comes George W. Rinkel, administrator of the estate of Louis F. Rinkel, deceased, by his attorneys, and Pearl B. Rinkel, widow of said deceased and curatrix of the estate of Louis Rinkel, a minor son of said deceased, by her attorneys, and the exceptions of the said Pearl B. Rinkel to the report of sale made by the said administrator having heretofore been taken under advisement and having been duly considered by the court, and the court being fully advised in the premises, doth order, adjudge and decree that the sales reported by the said administrator in the report of sale heretofore submitted to this court, be disapproved, set aside and for naught held, upon the execution and de-

livery to this court of a bond by the said Pearl B. Rinkel, in the sum of three thousand dollars. ($3,000) conditioned that at a resale of the real estate and equities of redemption of the said deceased, or any part thereof, she will bid therefor at least fifty (50) per cent in excess of the appraised value thereof, as per the appraisement filed with the said report, and that she will purchase and pay for a sufficient amount of said real estate, to be selected by her, to enable the said administrator to pay the debts and expenses of administration of said estate, and the court having examined the bond of the said Pearl B. Rinkel, now presented in court, and having examined the surety on such bond, doth approve the same and order it filed in this court for the protection of the said administrator and the creditors of said estate.''

On July 15, 1902, Pearl B. Rinkel filed said bond in the probate court, as recited in said order, and the same on said day was duly approved by the Hon. W. W. Henderson, judge thereof, in open court. Said bond is in words and figures as follows:

"*Know All Men by These Presents,* That we, the undersigned, Pearl B. Rinkle, as principal, and Leo Rassieur, as surety, both of the city of St. Louis, in the State of Missouri, acknowledge ourselves indebted to George W. Rinkel, administrator of the estate of Louis F. Rinkel, deceased, in the sum of three thousand dollars ($3,000) for the payment of which sum, well and truly to be made, we firmly bind ourselves, our executors and administrators joint and severally by these presents.

"Signed, sealed and delivered in the city of St. Louis, State of Missouri, on this fourteenth day of July, 1902.

"The condition of the above obligation is such that

"*Whereas,* the above bounden Pearl B. Rinkel, in her own name and as curatrix of the estate of her minor son, Louis Rinkel, has filed exceptions to the re-

port of sale of real estate filed in the said estate at the June term, 1902, of the probate court of the city of St. Louis; and

"*Whereas,* the said exceptions have been sustained by the said court at her request;

"Now, therefore, the above bounden shall well and truly, at a resale of the real estate and equities of redemption of the said deceased, bid therefor at least fifty (50) per cent in excess of the appraised values thereof, as per the appraisement filed with the said report and will purchase and pay for a sufficient amount of said real estate to enable the said administrator to pay the debts and expenses of administration of said estate, then this obligation shall be null and void, otherwise to remain in full force and virtue.

"PEARL B. RINKEL,        (Seal)

"LEO RASSIEUR,        (Seal)."

Said bond is indorsed on the back thereof as follows: "Filed, July 15, 1902, C. Wm. Koenig, Clerk. Bond approved. W. W. H." (Hon. W. W. Henderson).

On July 15, 1902, the probate court entered a new order directing said administrator to resell said real estate, which order, omitting caption, is as follows:

"Now at this day comes George W. Rinkel, administrator of Louis F. Rinkel, deceased, and also comes Pearl B. Rinkel, widow of said deceased, and the latter moves the court for a renewed order of sale of certain real estate belonging to the estate of said deceased, and it appearing to the court that the order of sale made herein at the March, 1902, term thereof, has not been executed, it is ordered that said motion be sustained, and that the said administrator do, on Saturday, the sixth day of September, 1902, at the eastern front door of the courthouse of the city of St. Louis, and during the session of the circuit court or probate court of said city, between the hours of ten o'clock in the forenoon

and five o'clock in the afternoon of that day, expose to sale, at public vendue or outcry, the following real estate in the petition of said administrator described, or so much thereof as may be necessary to pay the debts due by said deceased, to-wit: (Describing parcels 1, A, B, C, D and 4).

"And said sale shall be made in the order the property is above set forth, and sell the same for the purposes in said petition mentioned, on the following terms, to-wit: The equities for cash and the remaining property for one-third cash and balance in two equal deferred payments, payable respectively in one and two years after the date of sale. The deferred payments bearing interest at the rate of six per cent per annum from date of sale and to be evidenced by the notes of the respective purchasers and to be secured by deed or deeds of trust on the property sold, or, at the option of the purchaser, for all cash.

"First having had the same appraised and notice of the time, terms and place of said sale published for four weeks prior thereto in some newspaper in the city of St. Louis, as directed by law, and that he make return of his proceedings under this order at the next term of this court after such sale."

Said report of sale is indorsed on the back thereof as follows: "Filed June 2, 1902. C. Wm. Koenig, by G. W. Gutting, D. C., June 27, 1902, report and exceptions taken under advisement. July 15, 1902, report of sale disapproved and renewed order of sale. Sale disapproved and renewed order of sale as per memo. Bond approved. W. W. H."

On September 8, 1902, said administrator filed a report of sale under said renewed order of July 15, 1902, in which, among other things, said administrator reported as follows:

"Your petitioner further states that after the said renewed order of sale was made as aforesaid, and prior to the said said sixth day of September, 1902, the date of

sale mentioned in said renewed order of sale, to-wit, on the twelfth day of August, 1902, the said parcel of real estate, herein described as parcel B, was sold at trustee's sale under the said deed of trust mentioned in said order of sale; that thereafter, to-wit, on the fourth day of September, 1902, said parcel of real estate, herein described as parcel (1) was sold under the said deed of trust mentioned in said order of sale, passed to the purchasers at said sales and out of your petitioner, as such administrator of the estate of Louis F. Rinkel, deceased, so that your petitioner was no longer in possession of the said two parcels of real estate on said sixth day of September, 1902, the date of sale mentioned in said renewed order of sale.''

It further appeared by said report that said administrator sold the other parcels of real estate at public vendue on September 6, 1902, to Pearl B. Rinkel, she being the highest and best bidder therefor, as follows: Parcel (4) for $150; parcel (a) for $520; parcel (c) for $330; parcel (d) for $655; that said sales on September 13, 1902, were duly approved by said court.

By his annual report filed October 18, 1902, the administrator reported the receipt of the following amounts from the trustees under the deeds of trust described in the inventory, being the surplus realized upon foreclosures, to-wit: From Henry B. Surkamp, trustee, Hamilton avenue lot (parcel 1), $10; from S. J. Fisher, trustee, Easton avenue lot (parcel 2), $1,001.43; from Ford W. Thompson, trustee, Franklin avenue lot (parcel B) $6.53.

The evidence shows that the respondent went to the holder of the deed of trust on the Hamilton avenue lot before the note secured by the deed was due, and represented that he wanted to take it up and induced him to send it to W. B. Thompson, respondent's attorney, who paid the holder the principal and interest due on the note and received it and the deed of trust into his possession. After getting possession of the deed of trust,

Thompson had the trustee advertise the lot for sale and it was sold on September 4, 1902, and was bid in by Pearl Rinkel at five hundred and seventy-five dollars. The evidence also shows that the note and deed of trust on lot 8, city block 3805, was past due, and the holder, in May, 1902, notified the respondent that he wanted his money. Respondent requested the holder to take the papers to Mr. Thompson and advised him that Thompson would give him a check for the amount due. The holder took the papers to Thompson, received Thompson's check for the principal and interest due on the note and delivered to him the deed of trust and note. After getting possession of this deed of trust, Thompson had the trustee sell under the deed. At this sale Pearl Rinkel became the purchaser for $2,500.

The evidence further shows that the lot fronting twenty-five feet on the south line of Franklin avenue was inherited by the Rinkel children, of whom there were six, from their mother, Catherine Rinkel. This lot was incumbered by a deed of trust to secure a principal note for $2,800 past due. The holder of the note advertised and sold under the deed of trust. At this sale Harry A. Rinkel, a brother of respondent, became the purchaser for $3,000. He testified that W. B. Thompson got the money for him to pay his bid; that he thought the property was worth $4,000, and after making the purchase he made the following declaration of trust in favor of his brothers, sister, Pearl Rinkel and her son, Louis Rinkel:

"Whereas, on the twelfth day of August, A. D. 1902, the undersigned, Harry A. Rinkel, purchased at trustee's sale, as the highest bidder, the following described real estate situate, lying and being in the city of St. Louis, State of Missouri, to-wit:

"A lot in city block 941, having front of twenty-five feet on south line of Franklin avenue.

"And whereas, George W. Rinkel, Edward J. Rinkel, Adolph H. Rinkel and Mollie H. Rinkel, as-

sumed a certain indebtedness due to the undersigned
Harry Rinkel, by Catherine M. Rinkel, and which in-
debtedness was also shared by Louis F. Rinkel, now de-
ceased;

"And whereas, the undersigned, Harry A. Rinkel,
is desirous of giving to Pearl B. Rinkel, widow of said
Louis F. Rinkel, deceased, and to Louis Rinkel, the
minor son of said Louis F. Rinkel, and to the above-
named George W. Rinkel, Edward J. Rinkel, Adolph
H. Rinkel and Mollie H. Rinkel, the benefit of any
profit he may receive from the sale of the above-de-
scribed real estate, so that the said Pearl B. Rinkel may
receive one-twelfth part of such profits, and the said
Louis Rinkel, minor, may receive one-twelfth part of
such profits and the said George Rinkel, Edward J.
Rinkel, Adolph H. Rinkel and Mollie H. Rinkel may
receive each one-sixth part of such profits;

"Now, therefore, these presents witness, that the
said Harry A. Rinkel does hereby agree to and with
said parties in consideration of the sum of one dollar, to
him paid by the said parties herein, to account for and
pay over from the sale and rent of the above-described
property, to the said parties herein mentioned and in
the shares herein mentioned, five-sixths (5-6) of the pro-
ceeds of such sale or rent of said property, after pay-
ing all the expenses of said property for repairs, taxes,
interest, commissions on loan, attorneys fees and the
deed of trust on said property. It being understood and
agreed that the share of the said Pearl B. Rinkel, widow
of said Louis F. Rinkel, and the share of the said minor,
Louis Rinkel, shall be free from any claim of the said
Harry A. Rinkel on account of the indebtedness due him
from the estate of the said Catherine M. Rinkel and
shall be paid out of the net proceeds of sale, over and
above the amounts that are to be deducted, as herein
stated; but the shares of the other parties hereto shall
be credited only with the amount due by the said par-
ties and which they voluntarily agreed to pay to the

undersigned, Harry A. Rinkel, on account of the said indebtedness to the said Harry A. Rinkel from the said Catherine M. Rinkel, and if the net proceeds of sale do not amount to said indebtedness then the said parties agree to pay the balance of said indebtedness so assumed by them to the undersigned, Harry A. Rinkel.

"And it is further agreed by the undersigned, Harry A. Rinkel, to use all his endeavors to sell the said property on the best terms possible, and that such sale shall be made within one year from the twelfth day of August, 1902.

"And it is further agreed by the said Harry A. Rinkel, to and with the said parties herein, that the said parties shall have only an interest in the proceeds of the sale of said property, and that in case of the death of the said Harry A. Rinkel, that this agreement shall also be binding on his administrators, heirs and assigns.

"In witness whereof, the said Harry A. Rinkel has hereunto set his hand and seal this twelfth day of August, 1902.          HARRY A. RINKEL,     (Seal.)"

This declaration was duly acknowledged before a notary public.

Respondent was the largest individual creditor of the estate. In order to raise money to pay back taxes due on lands belonging to the estate and to the Rinkel heirs, and to pay past due interest notes; he sold his claim of $1,205 against the estate to his attorney, W. B. Thompson. The evidence tends to show that Thompson had been the attorney of the Rinkel family, including Louis F. Rinkel, deceased, for thirty years, and that he had taken up some of the interest notes for the accommodation of the Rinkels.

After the administrator made the sale of the real estate to his brothers, but before the report of sale had been made, Pearl Rinkel, through her attorney, brought a suit in partition in the St. Louis circuit court, for the partition of all the lands held in common by the Rinkel heirs. The trustees and beneficiaries in the deeds

of trust incumbering the lands were made parties defendant. This proceeding, according to the evidence, precipitated foreclosures of the deeds of trust.

W. B. Thompson testified that he feared the interest of the deceased in the lands would be consumed in the payment of costs and attorneys' fees in the partition suit and that his unsecured claim against the estate was in danger, and he had the sales made under the deeds of trust controlled by him for the purpose of taking the lands out of the partition suit and with a view of having the moneys realized at the foreclosure sales, over and above the debts and costs of sales, applied to the payment of the unsecured debts of the estate, rather than to the payment of attorneys' fees in the partition suit.

The evidence shows that one of the appraisers was appointed by Pearl Rinkel, at the request of respondent, as administrator; that the three appraisers were well acquainted with the value of real estate in the city of St. Louis, were well qualified and honestly appraised the lands, and appraised them at their full value. It also appears that the sales made by the administrator to his two brothers were bona fide sales, made in perfect good faith; that a part of the purchase price was paid when the bids were accepted and memoranda of the sales were signed by the administrator and delivered to the purchasers at the time the sales were consummated.

It further appears that Pearl Rinkel was without means to purchase the property and that the money used by her, in making the purchase she made, was furnished by her attorney, Judge Rassieur. The evidence is uncontradicted that her verbal offer and her offer by letter, to pay more for the lands than their appraised value, was made to the administrator after he had made the sales to his brothers, Adolph and Harry Rinkel, and after the Franklin avenue property had been sold under the deed of trust. The renewed order of sale was, according to the uncontradicted evidence, prepared by

Judge Rassieur, the attorney for Pearl Rinkel, without the knowledge or consent of the administrator or his attorney. This order is not in accordance with the ordinary form of making up such orders, nor is it in terms as directed by the statute, in this, it directs what particular parcels of lands shall be sold and does not include all the lands and directs in what order each parcel shall be sold, and deviates from the original order in that it requires the sale to be made at public auction only. It shows that it was prepared to suit the wishes of the prospective purchaser by her attorney in the absence of the administrator, and without his knowledge or consent.

The trouble between Pearl Rinkel and the administrator or, to speak more correctly, the war between Pearl Rinkel's attorney, Judge Rassieur, and the attorney for the administrator, W. B. Thompson, was declared by the commencement of the partition suit. It seems that Judge Rassieur's purpose and intention was to wind up the affairs of the estate of Louis Rinkel, deceased, in the circuit court, in a proceeding for partition of his real estate, where he (Rassieur) would be in control, rather than it should be administered in the probate court in the manner the law directs, whereas, Mr. Thompson, as attorney for the administrator, wanted the administration of the assets of the deceased to go through a regular course of administration in the probate court, where it rightfully belonged, and where, as attorney of the administrator and as a creditor of the estate, he might work in the lead.

We have read the abstracts of the evidence carefully and considerately and have failed to discover any substantial evidence showing that the administrator has been guilty of any waste. He had no control over the deeds of trust under which some of the property was sold and he and the estate were without means to pay them off. He did not solicit the foreclosures and is not to be blamed that they were had. After consum-

mating the sales to his two brothers, the administrator could not repudiate those sales and accept a higher bid from Pearl Rinkel. It was not in his power to set aside his contracts in order to make another one in respect to these lands, and his refusal or failure to consider the bid of Pearl Rinkel, pending his report of sale before the probate court, is no evidence whatever of waste or bad faith. The contracts he had made were binding on him until disapproved by the probate court.

It is further contended that his insistence that his sales to his brothers should be approved, in the face of a much better offer, showed bad faith. We do not think so, in the light of the evidence that Pearl Rinkel, who made the offer, was known by him to be without means to make good her offer and had not, at the time the report was under consideration, given the bond which she said she would give to make good her bid, nor did she then offer or tender such bond. In these circumstances the administrator, we think, acted with wise discretion in insisting that the sales should be approved as he made them. The charges of waste were not proven and the judgment of the circuit court is affirmed. *Reyburn* and *Goode, JJ.*, concur.